UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WOODS,<br><br>        Plaintiff,<br><br>     v.<br><br>B. SWIFT, et al.,<br><br>        Defendants. | No.  2:  14-cv-2665 JAM KJN P<br><br><br>FINDINGS AND RECOMMENDATIONS |

I.  Introduction

      Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  On November 10, 2015, plaintiff filed a motion to amend his complaint. (ECF No. 35.)  While the motion to amend was pending, defendant Swift filed a summary judgment motion.  (ECF No. 47.)  On February 29, 2016, plaintiff filed an opposition.  (ECF No. 48.)

      On April 25, 2016, the undersigned granted plaintiff's motion to file an amended complaint.  (ECF No. 50.)  The April 25, 2016 order vacated defendant's summary judgment motion, and granted defendant twenty-one days to file a response to the amended complaint and to inform the court whether she sought reinstatement of the vacated summary judgment motion. (Id.)

1

1   On May 13, 2016, defendant filed an answer to the amended complaint (ECF No. 51) and

2   a motion to reinstate her summary judgment motion (ECF No. 52.)

3   For the reasons stated herein, the undersigned recommends that defendants' motion for

4   summary judgment be granted.

5   II.  Summary Judgment Motion

6       A.  Legal Standard for Summary Judgment

7   Summary judgment is appropriate when it is demonstrated that the standard set forth in

8   Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

9   movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

10  judgment as a matter of law." Fed. R. Civ. P. 56(a).

11  Under summary judgment practice, the moving party always bears the initial

12  responsibility of informing the district court of the basis for its motion, and identifying those

13  portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

14  together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue

15  of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed.

16  R. Civ. P. 56(c)).

17  "Where the nonmoving party bears the burden of proof at trial, the moving party need

18  only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

19  Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

20  387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

21  committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

22  burden of production may rely on a showing that a party who does have the trial burden cannot

23  produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

24  should be entered, after adequate time for discovery and upon motion, against a party who fails to

25  make a showing sufficient to establish the existence of an element essential to that party's case,

26  and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

27  "[A] complete failure of proof concerning an essential element of the nonmoving party's

28  case necessarily renders all other facts immaterial."  Id. at 323.  Consequently, if the moving

party meets its initial responsibility, the burden then shifts to the opposing party to establish that a

genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual

dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is

required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c);

Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in

contention is material, i.e., a fact that might affect the outcome of the suit under the governing

law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v.

Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in

part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not

establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

amendments).

    In resolving a summary judgment motion, the court examines the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

255.  All reasonable inferences that may be drawn from the facts placed before the court must be

drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

are not drawn out of the air, and it is the opposing party's obligation to produce a factual

predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

3

1   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

2   some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

3   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

4   trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

5        By contemporaneous notice provided on January 6, 2015, (ECF No. 11), plaintiff was

6   advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal

7   Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*);

8   Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

9   III.  Plaintiff's Claims

10        This action proceeds on plaintiff's verified amended complaint filed November 10, 2015,

11   against defendant Swift.  (ECF No. 35.)  Plaintiff alleges that defendant Swift, a nurse, provided

12   inadequate medical care in violation of the Eighth Amendment.

13        Plaintiff alleges that on February 21, 2014, he injured his left ring finger while playing

14   basketball.  (Id. at 13.)  Plaintiff alleges that he hyperextended his finger.  (Id.)  Plaintiff was then

15   taken to the nurse station, where he spoke with Nurse Hayes.  (Id.)  Nurse Hayes looked at

16   plaintiff's left ring finger and told him, "nothing is wrong.  It's probably jammed."  (Id.)  Nurse

17   Hayes advised plaintiff to submit a sick call slip.  (Id.)

18        Plaintiff alleges that when he returned to his cell that day, he submitted a CDCR 7362

19   Health Care Services Request form which stated that he had jammed his "ring finger…it hurt and

20   swelled up around 4:00 p.m.…my finger was still hurting and throbbing and turning purplish in

21   color, and I could not move my ring finger.  At 5 p.m. pill call, Nurse Hayes ignored my

22   problem."  (Id.)

23        On February 24, 2014, defendant Swift saw plaintiff for triage.  (Id.)  Defendant Swift

24   examined plaintiff's left hand and told him, "there is nothing wrong with your hand.  It's just

25   jammed or sprained."  (Id. at 13-14.)  Plaintiff alleges that during this examination, plaintiff told

26   defendant Swift that he was in severe pain, unable to close his left hand, and that he was

27   experiencing numbness and tingling in his hand.  (Id. at 14.)  During this examination, plaintiff

28   asked defendant Swift to allow him to see a doctor.  (Id.)

4

1    Plaintiff alleges that defendant Swift's notes from the February 24, 2014 examination state

2    that plaintiff complained of "sharp or throbbing" pain in his right ring finger.  (Id.)  She also

3    wrote that plaintiff complained of numbness and tingling.  (Id.)  Plaintiff alleges that he did not

4    complain of an injury to his right ring finger, but to his left ring finger.  (Id.)

5    Plaintiff alleges that defendant Swift did not refer him to see a doctor following the

6    February 24, 2014 examination.  (Id.)

7    Plaintiff alleges that on April 9, 2014, he had another triage with defendant Swift

8    regarding an injury to his lower leg area.  (Id. at 15.)  During this examination, defendant Swift

9    said, "Another basketball injury.  I'm charging you $5."  (Id.)  Plaintiff told defendant Swift that

10   he had not yet seen a doctor for his injured finger.  (Id.)  Defendant Swift replied, "You are not

11   going to see a doctor for your leg."  (Id.)

12   Plaintiff alleges that on April 17, 2014, he saw Dr. Hamkar for a chronic care follow-up

13   visit.  (Id.)  The purpose of this visit was not an evaluation of plaintiff's injured finger.  (Id.)

14   However, Dr. Hamkar evaluated plaintiff's left ring finger, noting that plaintiff was unable to

15   fully flex the finger.  (Id.)  Dr. Hamkar noted "some mild swelling at the proximal interphalangeal

16   joint."  (Id.)  Dr. Hamker ordered an x-ray after concluding that plaintiff had a possible rupture of

17   his flexor tendons at the proximal interphalangeal and the distal interphalangeal joints.  (Id.)  Dr.

18   Hamkar also found that because plaintiff was left-handed, he would refer him to hand surgery for

19   evaluation and treatment.  (Id.)

20   Plaintiff alleges that on April 20, 2014, Dr. Hamkar's request to refer plaintiff for

21   evaluation by an orthopedic specialist was approved.  (Id.)  On June 30, 2014, plaintiff was

22   evaluated by Dr. Ibrahim, an orthopedic surgeon at Doctors Hospital of Manteca.  (Id. at 16.)  Dr.

23   Ibrahim told plaintiff that the only option was to fuse the finger joint using a screw to give him

24   more function.  (Id.)  Dr. Ibrahim told plaintiff that he could not locate and reattach the torn

25   tendon, given the amount of time between the injury and his surgical evaluation.  (Id.)

26   Plaintiff alleges that on July 11, 2014, he had surgery on his left ring finger.  (Id.)

27   Plaintiff alleges that he has permanent nerve damage in his left ring finger and requires the use of

28   a finger sleeve.  (Id.)  Plaintiff alleges that he has permanently lost the full range of motion in his

5

1    left ring finger.  (Id.)

2         Plaintiff alleges that defendant Swift violated his Eighth Amendment right to adequate

3    medical care by failing to treat his left ring finger on February 24, 2014, and April 9, 2014.

4    Plaintiff alleges that had defendant Swift referred him to a doctor in February or April 2014, he

5    would have received surgery sooner and he would not have suffered permanent damage to his

6    finger.

7    IV.  Legal Standard for Eighth Amendment Claims

8         To succeed on an Eighth Amendment claim predicated on the denial of medical care, a

9    plaintiff must establish that he had a serious medical need and that the defendant's response to

10   that need was deliberately indifferent.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see

11   also Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A serious medical need exists if the failure to

12   treat the condition could result in further significant injury or the unnecessary and wanton

13   infliction of pain.  Jett, 439 F.3d at 1096.  Deliberate indifference may be shown by the denial,

14   delay or intentional interference with medical treatment or by the way in which medical care is

15   provided.  Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988).  To act with deliberate

16   indifference, a prison official must both be aware of facts from which the inference could be

17   drawn that a substantial risk of serious harm exists, and he must also draw the inference.  Farmer

18   v. Brennan, 511 U.S. 825, 837 (1994).  Thus, a defendant is liable if he knows that plaintiff faces

19   "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures

20   to abate it."  Id. at 847.  "[I]t is enough that the official acted or failed to act despite his

21   knowledge of a substantial risk of serious harm."  Id. at 842.

22        A physician need not fail to treat an inmate altogether in order to violate that inmate's

23   Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989).  A

24   failure to competently treat a serious medical condition, even if some treatment is prescribed, may

25   constitute deliberate indifference in a particular case.  Id.

26        It is well established that mere differences of opinion concerning the appropriate treatment

27   cannot be the basis of an Eighth Amendment violation.  Jackson v. McIntosh, 90 F.3d 330, 332

28   (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

1    V.   Discussion

2         A.   Defendant's Motion

3         In essence, defendant Swift moves for summary judgment on grounds that plaintiff did not

4    complain about an injury to his *left* ring finger—he complained about an injury to his *right* ring

5    finger.  The undersigned summarizes defendant's evidence herein.

6         In her declaration, defendant Swift states, in relevant part,

7              2.  I am employed by the California Department of Corrections and
               Rehabilitation (CDCR) as a Registered Nurse (RN) at the California
8              State Prison, Sacramento (SAC), in Represa, California.  I have
               been employed as a RN at SAC for approximately fifteen years.
9
10             3.  Between January 1, 2014 and May 30, 2014 (the relevant period)
               that is the subject of this action, I was an RN and I typically worked
11             in the building where inmate Woods was housed.

12             4.  During the relevant period my typical duties as an RN at SAC
               included, but were not limited to:  evaluating inmates at triage
13             pursuant to CDCR Form 7362 Health Care Services Request
               Forms, or sick call slips, submitted by inmates asking for
14             appointments with their primary care physicians, responding to
               emergency medical alarms to administer immediate medical care
15             including CPR, training new RN's on institutional policies and
               procedures, collecting sick-call slips to determine how soon inmates
16             need to be seen by a RN at triage and responding to doctors' orders
               for ongoing medical care of inmates after their appointments.

17             5.  On or around February 4, 2014, pursuant to a CDCR Form 7362
               Health Care Services Request Form submitted by inmate Woods on
18             February 2, 2014, I evaluate inmate Woods for reported foot, ankle
               and knee pain on his right leg after playing basketball.   After
19             evaluating his reported injuries, I did not refer inmate Woods for an
               appointment with his PCP.  However, I did instruct him to file
20             another Form 7362 if he had increased swelling and/or pain.  A true
               and correct copy of the Health Care Services Request Form and the
21             Encounter Form is attached as Exhibit 1.

22             6.  On or around February 24, 2014, pursuant to a CDCR Form
               7362 Health Care Services Request Form submitted by Woods on
23             February 21, 2014, I evaluated the ring finger on his right hand.  At
               that time I observed that Woods' had no swelling or discoloration
24             on his right ring finger so I did not refer him for an appointment his
               [sic] PCP.  However, I did instruct him to file another Form 7362 if
25             he had increased swelling and/or pain.  A true and correct copy of
               the Health Care Services Request Form and the Encounter Form is
26             attached as Exhibit 2.

27             7.  On or about April 8, 2014, pursuant to a CDCR Form 7362
               Health Care Services Request Form submitted by inmate Woods on
28             April 7, 2014, I saw inmate Woods for injuries to his left leg and

7

1             Achilles tendon.  After evaluating his reported injuries, I referred
          Woods for a routine appointment with his PCP.  A true and correct

2             copy of the Health Care Services Request Form and the Encounter
          Form is attached as Exhibit 3.

3

4             8.  During the relevant time period, inmate Woods' medical records
          reflect that I did not evaluate any injuries to the ring finger on
          inmate Woods' left hand.

5

6             9.  During the relevant time period, I did not deny inmate Woods
          any medical treatment for any reported injuries.

7             10.  If inmate Woods had presented me with an injury and/or illness
          that required a doctor's evaluation and treatment, I would have

8             referred him to an appointment with his primary care physician.
          During the relevant period, only the injuries to inmate Woods' left

9             leg and left Achilles tendon required a referral.

10  (ECF No. 47-4 at 1-3.)

11        The CDCR 7362 form submitted by plaintiff on February 21, 2014, and attached to

12  defendant Swift's declaration, contains the following statement by plaintiff:

13            On 2/21/14 at approx.. 155 p.m. I was shooting around a little
          basketball, when the ball came off the back board and hit and

14            jammed my ring finger, it hurt and swelled up around 4:00 p.m. my
          finger was still hurting and throbbing and turned purplish in color

15            and I could not move my ring finger.  At 5 pm pill call Nurse Hayes
          ignored my problem.

16

17  (ECF No. 47-4 at 8.)

18        Plaintiff's February 21, 2014 CDCR 7362 form does not state whether the injured ring

19  finger is on plaintiff's left or right hand.

20        The form completed by defendant Swift following her February 24, 2014 examination of

21  plaintiff states that plaintiff complained of an injury to his right ring finger.  (Id. at 9.)  The form

22  contains two notations by defendant Swift that the injury occurred to plaintiff's right finger.  (Id.)

23  Defendant Swift wrote that plaintiff described the pain as short and throbbing.  (Id.)  Defendant's

24  notes also state, "no swelling or discoloration."  (Id.)  Defendant checked the boxes indicating

25  that plaintiff reported numbness and tingling.  (Id.)  Defendant wrote that she did not refer

26  plaintiff to see a physician.  (Id.)  The form indicates that defendant Swift advised plaintiff that he

27  had suffered a "strain or sprain."  (Id.)

28  ////

The form completed by defendant Swift following her April 9, 2014 examination of plaintiff, attached to her declaration, states that plaintiff complained of pain in his left leg and that he could barely walk.  (Id.)  Defendant Swift also wrote that plaintiff was seen by the RN on either February 4, 2014, or February 24, 2014 (the undersigned cannot make out the date), for "finger swelling."  (Id. at 11-12.)  The form indicates that defendant Swift referred plaintiff to a doctor following her examination of plaintiff on April 9, 2014.  (Id.)

B.  Plaintiff's Opposition

In his opposition, plaintiff argues that defendant Swift mistakenly wrote in her February 24, 2014 report that plaintiff injured his right ring finger.  In support of his opposition, plaintiff has provided a copy of an administrative grievance he signed April 16, 2014, complaining that defendant Swift failed to treat an injury to his left ring finger.  (ECF No. 48 at 10.)  In this grievance, plaintiff wrote,

> On 3-18-14, I was seen in the 8 block dining area by Nurse Bonnie Swift of an injury that occurred on the basketball court.  My left ring finger got pulled back jumping up for a rebound, the ball pulled my finger which swelled instantly and I could not bend my finger at all.  Nurse Swift said that I would be scheduled to see a doctor.  I never saw a doctor for that injury.  She did prescribe Ibuprofen and now I can't close my finger because I believe my tendon has snapped.  Nurse Swift refuses to let me see a doctor to get further examinations such as an x-ray or MRI.  On April 2, 2014 I seen Nurse Swift again for another injury around the Achilles Heel area, sheen [sic], calf and around the ankle which I was in extreme pain.  Nurse Swift scoffed and said another "basketball injury" and said I'm charging you $5.  I said I still haven't seen the doctor for my finger.  She said your [sic] not going to see the doctor for your leg.  I said what do you mean I'm not going to see the doctor.  I'm in pain.  My leg is swollen, I'm walking with a limp and I can't put pressure on my left leg!  Nurse Swift said because I can and told me to write a 602 nothing going to happen.

(Id. at 10-11.)

According to the grievance form, this grievance was granted in part at the first level of review.  (Id. at 11.)  Plaintiff appealed this response to the second level of review on July 3, 2014.  (Id. at 12.)  In his second level grievance, plaintiff wrote,

////

////

9

> My finger will not properly work because on 6-3-14 I went to doctor's hospital in Manteca.  The doctor/surgeon said CSP-Sac New Folsom waited too long to have me seen for my torn tendon.  It cannot be saved because of Nurse Swift delaying, denying me access to med.

(Id.)

The form indicates that plaintiff's second level grievance was granted in part on August 12, 2014.  (Id.)  Plaintiff filed a grievance to the third level of review.  (Id.)  In his third level grievance, plaintiff wrote:  "I was deliberately indifferent [sic] by Nurse Swift by not being seen.  Something was wrong with my finger.  Nothing was done until 5 months later which in at another prison. I can't use my hand.  It will be permanently disfigured."

Plaintiff has also provided a chronic care follow-up visit/progress note dated April 17, 2014.  (Id. at 14.)  This report, signed by Dr. Hamkar, states that he examined plaintiff for his chronic care issues and injury to his left ring finger.  (Id.)  Dr. Hamkar wrote,

> About a month ago, he was playing basketball on the yard and he hyperextended his left ring finger.  Since then, he complains of pain, swelling and inability to fully close his left hand.  He is left handed.  He was not seen apparently by any medical staff when the injury happened, and he is here discussing the issue with me for the first time.

(Id.)

Dr. Hamkar ordered an x-ray of plaintiff's left ring finger.  (Id.)  He wrote, "I am suspecting that he has a possible rupture of his flexor tendons at the proximal interphalangeal and the distal interphalangeal joints.  Since he is left handed and it is his dominant hand we will refer him to hand surgery for evaluation and treatment."  (Id.)

C. Further Briefing

As discussed above, in his April 16, 2014 grievance, plaintiff alleged that on March 18, 2014, he saw defendant Swift for his injured left ring finger.  Dr. Hamkar's note from his April 17, 2014 examination stated that plaintiff injured his left ring finger "about a month ago."  These documents suggested that the injury to plaintiff's left ring finger may have occurred later than February 21, 2014, such as in mid-March 2014.  Erring on the side of caution, on June 3, 2016, the undersigned directed the parties to file further briefing addressing whether defendant Swift

10

examined an injury to plaintiff's left ring finger at any time between February 24, 2014, and April 16, 2014.  (ECF No. 53.)  The undersigned ordered that if any records existed demonstrating that defendant Swift treated plaintiff's left ring finger during that time, the parties should file those records.  (Id.)

In her response to the June 3, 2016 order, defendant referred to her declaration filed in support of the summary judgment motion, where she stated that plaintiff's medical records did not reflect that she evaluated plaintiff for any injuries to his left ring finger during the relevant time period, i.e., January 1, 2014, and May 30, 2014.  (ECF No. 47-4 at 1-2.)  In addition, during the relevant time period, defendant did not deny plaintiff any medical treatment for any reported injuries.  (Id. at 1-3.)

In his response to the June 3, 2016 order, plaintiff again argued that defendant Swift mistakenly wrote in her February 24, 2014 report that plaintiff injured his right ring finger.  (ECF No. 57.)   In other words, plaintiff continued to allege that he injured his left ring finger on February 21, 2014.  Attached as exhibits to plaintiff's further briefing are plaintiff's February 21, 2104 request for health care form, a page from his amended complaint, and defendant Swift's notes from her February 24, 2014 examination of plaintiff.  (Id.)

D. Analysis

Defendant Swift does not appear to dispute that, at some time, plaintiff injured his left ring finger and required surgery.  It is also undisputed that defendant Swift examined plaintiff on February 24, 2014, and April 8, 2014.

The issues requiring further discussion are:  1) when did plaintiff injure his left ring finger; 2) did he report an injury to his left ring finger to defendant Swift; and 3) is there any evidence that defendant Swift acted with deliberate indifference.

*When Did Plaintiff Injure His Left Ring Finger?*

In his verified amended complaint, plaintiff alleges that he injured his left ring finger on February 21, 2014.  However, as discussed above, plaintiff's April 16, 2014 grievance and Dr. Hamkar's April 17, 2014 report suggest that the injury occurred later, such as in mid-March 2014.  A later injury would undermine plaintiff's claim that defendant Swift failed to treat plaintiff's left

11

1   ring finger on February 24, 2014.

2          For the following reasons, the undersigned finds that plaintiff's April 16, 2014 grievance

3   and Dr. Hamkar's report do not undermine plaintiff's sworn statement in his amended complaint

4   regarding when his injury occurred.

5          Under the sham affidavit rule, "a party cannot create an issue of fact by contradicting his

6   prior deposition testimony."  Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991).

7   Courts most commonly apply the sham affidavit rule to cases where a party submits an affidavit

8   which contradicts the party's sworn deposition testimony.  See Yeager v. Bowlin, 693 F.3d1076,

9   1080  (9th Cir. 2012) (comparing an affidavit with deposition testimony), Kennedy, 952 F.2d at

10  264–65 (same).  But the rule's application has extended beyond depositions:  "This rule ... applies

11  to conflicts between affidavits and interrogatory responses as well...."  Kibbee v. City of Portland,

12  1999 WL 1271868, at *4 (D.Or. Dec. 23, 1999) (citing Dist. No. 1J Multnomah County v.

13  AcandS, Inc., 5 F.3d 1255, 1264 (9th Cir. 1993)).  However, "[u]nsworn testimony cannot be the

14  basis for striking subsequent and contradictory sworn testimony."  Kibbee, 1999 WL 1271868, at

15  *4, see also Leslie v. Grupo, ICA, 198 F.3d 1152, 1158 (9th Cir.1999) (reversing a district court's

16  grant of summary judgment after striking plaintiff's affidavit because it was contradictory to pre-

17  suit correspondence between plaintiff and defendant).

18         In addition, since Kennedy, the Ninth Circuit has imposed a second requirement for

19  application of the sham affidavit rule:  that the inconsistency between the party's prior deposition

20  testimony and his subsequent affidavit be "clear and unambiguous."  Van Asdale v. Int'l Game

21  Tech., 577 F.3d 989, 998–99 (9th Cir. 2009).

22         For the following reasons, the undersigned finds that the sham affidavit rule does not bar

23  plaintiff's sworn statement in the amended complaint that the injury to his left ring finger

24  occurred on February 21, 2014.  Most importantly, plaintiff's April 16, 2014 grievance and Dr.

25  Hamkar's report do not contain sworn statements by plaintiff.  For this reason, the sham affidavit

26  rule is not applicable to bar plaintiff's sworn statement in his amended complaint that he injured

27  his left ring finger on February 21, 2014.  Moreover, neither plaintiff's grievance nor Dr.

28  Hamkar's report clearly state when the injury to plaintiff's left ring finger occurred.  In other

12

1    words, the inconsistency between these two documents and plaintiff's sworn amended complaint

2    regarding when the injury occurred is not "clear and unambiguous."

3         Defendant has offered no evidence regarding when the injury to plaintiff's left ring finger

4    occurred.  Accordingly, for purposes of this summary judgment motion, the undersigned accepts

5    plaintiff's sworn statement that the injury occurred on February 21, 2014.

6         *Did Plaintiff Report An Injury to His Left Ring Finger to Defendant on February 24,*

7    *2014?*

8         In his verified amended complaint, plaintiff alleges that on February 24, 2014, he told

9    defendant Swift that he injured his left ring finger.  As discussed above, in her declaration,

10   defendant Swift states that on February 24, 2014, plaintiff complained of an injury to his right

11   ring finger.  Accordingly, based on this dispute, the undersigned finds that whether plaintiff

12   informed defendant Swift of an injury to his left ring finger on February 24, 2014, is a disputed

13   material fact.  <u>See</u> Fed. R. Evid. 602 (lay witness may testify regarding matters of personal

14   knowledge).

15        *Did Defendant Swift Act with Deliberate Indifference on February 24, 2014?*

16        Plaintiff alleges that had defendant Swift referred him to a doctor on February 24, 2014,

17   he would have had surgery sooner and his finger would not have been permanently damaged.

18   Other than disagreeing on what finger plaintiff reported was injured, the parties generally agree

19   on what occurred on February 24, 2014.  The parties are in agreement regarding the symptoms

20   plaintiff reported suffering in his injured finger on that date:  pain, numbness and tingling.

21   Plaintiff also claims that he reported that he could not make a fist.  The parties agree that

22   defendant Swift told plaintiff that he had suffered a sprain or strain.  The parties agree that

23   defendant Swift did not refer plaintiff to a doctor on February 24, 2014.

24        Taking the facts in the light most favorable to plaintiff, i.e. he reported an injury to his left

25   finger that later required surgery, the undersigned finds that defendant Swift did not act with

26   deliberate indifference on February 24, 2014.  As discussed above, the test for whether a prison

27   official acts with deliberate indifference is a subjective one:  the official must "know[ ] of and

28   disregard[ ] an excessive risk to inmate health and safety; the official must both be aware of the

13

1    facts from which the inference could be drawn that a substantial risk of serious harm exists, and

2    he must also draw the inference." Farmer, 511 U.S. at 837.

3        The party claiming an Eighth Amendment violation "need not show that a prison official

4    acted or failed to act believing that harm actually would befall an inmate; it is enough that the

5    official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer,

6    511 U.S. at 842 (citation omitted).  "[A]n official's failure to alleviate a significant risk that he

7    should have perceived but did not, while no cause for commendation, cannot ... be condemned as

8    the infliction of punishment." Farmer, 511 U.S. at 837;

9        In order to prove that an official is subjectively aware of a risk to inmate health or safety,

10   a plaintiff inmate need not produce direct evidence of the official's knowledge; a plaintiff can rely

11   on circumstantial evidence indicating that the official must have known about the risk.  See Hope

12   v. Pelzer, 536 U.S. 730, 738 (2002) ("We may infer the existence of this subjective state of mind

13   from the fact that the risk of harm is obvious"); Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir.

14   1995).

15       Plaintiff has not demonstrated that defendant Swift knew that he faced a serious risk of

16   harm if she did not refer him to a doctor on February 24, 2014.   The undisputed facts

17   demonstrate that defendant Swift thought that plaintiff's finger was jammed or sprained, and he

18   did not need further medical attention.  These facts do not demonstrate that defendant Swift knew

19   that plaintiff's injury was more serious and required treatment by a physician.  At best, plaintiff

20   has demonstrated that defendant Swift negligently diagnosed his injury.  However, a negligent

21   diagnosis does not state an Eighth Amendment claim.  Wilhelm v. Rotman, 680 F.3d 1113, 1123

22   (9th Cir. 2012); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004) (a showing of medical

23   malpractice or negligence is insufficient to establish an Eighth Amendment violation).

24       The undersigned also finds that the risk of harm to plaintiff was not obvious based on his

25   symptoms.  In other words, the symptoms plaintiff alleges he presented on February 24, 2014,

26   were not so severe that defendant Swift must have known that he faced a significant risk of harm

27   if he did not see a doctor.  Plaintiff has also provided no expert evidence to support a claim that

28   the risk of harm was obvious.

1   For the reasons discussed above, the undersigned finds that defendant Swift did not act

2   with deliberate indifference on February 24, 2014.

3   *Did Defendant Act with Deliberate Indifference on April 9, 2014?*

4   The undersigned begins the analysis of plaintiff's claim regarding April 9, 2014, by

5   summarizing the relevant evidence.

6   Plaintiff alleges that on April 9, 2014, he saw defendant Swift regarding an injury to his

7   leg.  Plaintiff alleges that during this examination, he told defendant Swift that he had still not

8   seen a doctor for his injured finger.  Plaintiff alleges that defendant Swift replied, "You are not

9   going to see a doctor for your leg."

10   In her declaration, defendant Swift states that she saw plaintiff on April 8, 2014, for

11   injuries to his left leg and Achilles tendon.  Defendant Swift states, as does her report from the

12   examination, that she referred plaintiff for a routine appointment with his primary care physician

13   for these injuries.  (ECF No. 47-4 at 12.)

14   On April 17, 2014, plaintiff saw Dr. Hamkar, who referred plaintiff for further treatment

15   for his finger injury.  Dr. Hamkar's report states that he saw plaintiff for "chronic care issues" and

16   an injury to his left ring finger.  (ECF No. 48 at 14.)   Dr. Hamkar's report does not mention the

17   leg and Achilles tendon injuries mentioned in defendant Swift's April 8, 2014 referral.  Therefore,

18   it appears that Dr. Hamkar's examination of plaintiff was unrelated to defendant Swift's April 8,

19   2014 examination of plaintiff.

20   Plaintiff's claim that on April 9, 2008, defendant Swift told him that she would not refer

21   him to a doctor is contradicted by defendant's notes stating that she referred him to his primary

22   care physician for his leg injuries.  However, neither party has submitted any records by the

23   physician who saw plaintiff based on that referral.  Dr. Hamkar's April 17, 2014 notes, which do

24   not mention the leg injuries and state that plaintiff had not been seen before by a doctor for his

25   left finger injury, suggest that plaintiff did not see a doctor between the time defendant Swift

26   prepared her April 9, 2014 report and April 17, 2014.

27   However, assuming that defendant Swift did not refer plaintiff to a doctor on April 9,

28   2014 (or April 8, 2014 as alleged by defendant Swift), plaintiff saw Dr. Hamkar eight (or nine)

days later on April 17, 2014.  To succeed on his Eighth Amendment claim against defendant

Swift based on her alleged failure to refer him to a doctor on April 8, 2014, plaintiff would have

to demonstrate that he suffered substantial harm as a result of this nine day delay.  Wood v.

Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990) (when medical treatment is delayed rather than

denied, the delay generally amounts to deliberate indifference only if it caused substantial harm).

There is no evidence that this brief delay, occurring approximately six weeks after the initial

injury, caused plaintiff to suffer more harm to his left ring finger.  In addition, plaintiff allegedly

did not receive the surgery on his finger until approximately two months after his April 17, 2014

examination by Dr. Hamkar.  Because there is no evidence that the alleged delay caused further

damage to his finger, defendant Swift should be granted summary judgment as to plaintiff's claim

that she failed to refer him to a doctor on April 8, 2014.

VI.  Plaintiff's Motion for Extension of Time

        In response to the June 3, 2016 further briefing order, plaintiff filed a motion for an

extension of time to conduct discovery.  (ECF No. 56.)  Federal Rule of Civil Procedure 56(d)

provides that, if a nonmovant shows by affidavit or declaration that, for specified reasons, it

cannot present facts essential to justify its opposition to a summary judgment motion, the court

may allow the party time to conduct discovery.

        In his motion for an extension of time, plaintiff states that he intends to obtain

"interrogatories or deposed statements" from several witnesses.  (Id. at 4.)  The only witness

plaintiff specifically identifies is Dr. Ibrahim, who allegedly performed the surgery on his left

ring finger.  (Id. at 5.)  Plaintiff alleges that Dr. Ibrahim will testify at a deposition that had

plaintiff been treated sooner, he would not have had such extensive damage to his left ring finger.

(Id.)

        Even if Dr. Ibrahim were to testify that a delay in plaintiff's receipt of treatment for the

injury to his left ring finger caused further damage, this testimony would not be evidence that

defendant Swift acted with deliberate indifference on February 24, 2014.  In addition, while it is

plausible that a delay in plaintiff's receipt of surgery on his left ring finger caused permanent

damage, it is less plausible that the nine day delay alleged to have occurred in April 2014

16

significantly contributed to this damage.  The undersigned is not willing to delay resolution of this action based on the very speculative nature of this claim.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Plaintiff's motion for an extension of time to conduct discovery (ECF No. 56) be denied;

2.  Defendants' motion for summary judgment (ECF No. 47) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 30, 2016

Kendall J. Newman
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Wo2665.sj

17